Welman *vs.* Neufville, executor, *et al.*

The will of testatrix directed that her debts should be paid; that five hundred dollars be paid to her friend, Miss Welman, to be by her appropriated to the erection of a suitable monument to the memory of the deceased mother and aunt of the testatrix. The fourth item bequeathed the only piece of real estate owned by the testatrix to the wardens and vestry of Christ Church for a parsonage, and if not needed for that purpose, for charitable uses. Other items distributed certain shares of Central Railroad stock among various charities, most of them connected with the Episcopal church, and among a few friends, the daughters of a late bishop of that church.

The seventeenth item was as follows: "To my friend, Miss Margaret M. Welman, I give and bequeath all the silver, jewelry and other personal effects I may die possessed of, and not hereinbefore enumerated, having already communicated to her my wishes on the subject; and in connection with this bequest, I state that all the silver owned by me when the city of Savannah was captured by General Sherman, as well as that left by my aunt, Mrs. Scott, was at that time stolen."

Item eighteenth was as follows: "All the rest and residue of my estate, not hereinbefore specifically devised, bequeathed or disposed of, of what kind soever and wheresoever located, I give, devise and bequeath to the church wardens and vestrymen of the Episcopal church, in the city of Savannah, called Christ Church, and to their successors forever, whom I declare my residuary legatees, to be by them held or applied to and for the use and benefit of the said church in such manner as they may deem best for its interest."

A codicil bequeathed certain shares of stock to the wardens of Christ Church in trust, to pay over the dividends to a former slave of the testatrix during his life, and after his death, " to hold said stock to the said church wardens and vestrymen of the Episcopal church in the city of Savannah, called Christ Church, with the rest and residue of my estate, as declared and bequeathed in the eighteenth item of my said will." The testatrix left no other real estate than the lot devised for the church, but, besides silverware, jewelry and the like, she left personal property aggregating about twenty-five thousand dollars. She had for many years been a devoted member of Christ Church and left no kindred:

*Held,* that the seventeenth item of the will was intended only to cover and convey articles of slight value having a value derived chiefly from association and personal use, and that the valuable estate left by testatrix did not pass under the seventeenth item,

but under the residuary clause contained in the eighteenth item.

(*a.*) Parol declarations of intention were not admissible in construing this will, nor is it necessary to resort to the memorandum of the former will; but if resort be had thereto and to the facts which led to the changes made by the codicil thereto, as well as in the present will, in relation to the personal bequests made to the devisee under the seventeenth item, the construction of the will already made is confirmed.

February 9, 1886.

Wills. Estates. Evidence. Before Judge ADAMS. Chatham Superior Court. June Term, 1885.

To the report contained in the decision of the judge of the superior court, which is embraced in the decision of the Supreme Court, it is necessary to add only that the litigation arose on a bill filed by Miss Margaret M. Welman against Edward F. Neufville, executor of Miss Jane M. Young, deceased, and the wardens, etc., of Christ Church, to recover a considerable amount of money and shares of railroad stock in the hands of the executor. She claimed that this property passed to her under the seventeenth item of the will, while the wardens, etc., claimed that the money and stock passed to them under the eighteenth item. The case was submitted to the chancellor without a jury. He allowed parol proof of circumstances outside of the will, such as the conversations of the testatrix, her relations, intimacy and attachment to the parties, the making of a former will and of codicils, and the reasons given therefor, etc., to be put in, but reserved the question of its admissibility to be determined in his final decision, which he subsequently rendered. The complainant excepted.

CHISHOLM & ERWIN, for plaintiff in error, cited 17 Fla., 328; 2 Jarm. Wills. t. p. 352, 364, 327, 322; 15 Vesey, 507, 319; 17 Johns., 282; Cowper, 304; 3 Brown's Ch., 326; 14 Am. Dec., 577, note; 1 Y. & C., 300; 31 *Ga.*, 486; 18 *Id.*, 130; 24 *Id.*, 84; 2 Roper Leg., 490; 1 Speers Eq.,

84; 11 Simons, 228 ; O'Hara Wills, 74; 16 Ves., 451 ; Code, §§2237, 2238, 2239, 2456.   On 18th item, 2 Jarm. Wills, 344, 335; Code, §2464; 32 *Ga.*, 624 ; 50 *Id.*, 190; 3 Ves., 25 ; 2 Redf. Wills, 115; 2 Myl. & K., 331.   On extrinsic evidence, Wigr. Wills, 127–8, 103 ; 1 Speers Eq., 62 ; Story Eq. Pl., 863; 5 Mees. & W., 362 ; 18 How., 390; 13 M. & W., 198; Salk., 232 ; 8 Bing., 244; 6 Am. Dec., 363; 47 *Ga.*, 455 ; O'Hara Wills, 728, note i.; 30 *Ga.*, 168–9; 62 *Id.*, 256; 69 *Id.*, 503; 49 Am. Rep., 454 ; 12 Johns., 389; 64 *Ga.*, 112 ; 14 *Id.*, 370 ; 1 Jarm. Wills, 733, 739.

J. R. Saussy; R. Falligant ; W. G. Charlton, for defendants, cited 1 P. Wms., 302 ; 3 *Id.*, 112; 15 Ves., 319, 516; 13 *Id.*, 39–45 ; 1 Eq. C. Ab., 201 ; 2 Aik., 103 ; 3 *Id.*, 61 ; 6 Mad., 82; Cowp., 307; 11 Simon, 221; 20 Pick., 252; 3 Allen, 364 ; 128 Mass., 433 ; 33 Am R., 740 ; 2 Jar. Wills, 364; 2 Redf. Wills, 113 ; 2 Dr. & War., 59 ; 5 Ves., 811; 1 Am. Dec., 293 ; Code, §§2457, 2456, 3804 ; 1 Jar. Wills, 594, 600 ; 47 *Ga.*, 466 ; 3 Allen, 366 ; 5 *Id.*, 559 ; 1 Am. Dec., 293 ; 6 Mad. Ch., 82 ; 14 Am. Dec., 576, note ; 5 Mad. Ch., 51 (top); 1 Y. & C., 299 ; Code, §2476 ; 15 *Ga.*, 123 ; 30 *Id.*, 453 ; 69 *Id.*, 500 ; 65 *Id.*, 276 ; 64 *Id.*, 165.

Hall, Justice.

The complete analysis of the will to be construed, the clear and concise statement of the questions raised, and their satisfactory determination by Judge Adams, relieve us of much trouble and labor in the investigation and decision of this case, and render almost superfluous any addition, upon our own part, to his luminous judgment, which is so clear and concise, and withal so complete and comprehensive, that we cannot do better than to transcribe and adopt it as our own opinion.   To this conclusion, we have come after listening to and carefully considering the arguments and authorities presented by the learned and able counsel for both the contending parties.   The following, save and except its merely formal parts, is that opinion:

"This case involves the construction of the seventeenth item of the will of Miss Jane M. Young, which said seventeenth item is as follows:

'To my friend, Miss Margaret M. Welman, I give and bequeath all the silver, jewelry and other personal effects I may die possessed of, and not hereinbefore enumerated, having already communicated to her my wishes on the subject, and in connection with this bequest, I state that all the silver owned by me when the city of Savannah was captured by General Sherman, as well as that left by my aunt, Mrs. Scott, was at that time stolen.'

Of the preceding items, it is sufficient to say that the first directs that the debts of the testatrix be paid. The second directs that $500 be paid to her friend, Miss Welman, to be by her appropriated to the erection of suitable monuments to the memory of the deceased mother and aunt of testatrix. The third bequeaths lot 3, 4th tything, Anson ward, and improvements and all household and kitchen furniture, to 'the church wardens and vestrymen of the Episcopal church in Savannah, called Christ Church,' and their successors in trust, as a parsonage for the residence of the rector of said church, and if not required for this purpose, then to be disposed of as may be deemed best conducive to the interests of said church, the furniture not to be sold, but if any portion of it be not needed for the parsonage, to be distributed among her servants, or the poor of the congregation of said church. The other preceding items distribute certain shares of Central Railroad stock among various charities, most of them connected with the Episcopal church, and among a few friends, the daughters of the late Bishop Elliott and others. The eighteenth and last item is as follows:

'All the rest and residue of my estate not hereinbefore specifically devised, bequeathed or disposed of, of what kind soever and wheresoever located, I give, devise and bequeath to the church wardens and vestrymen of the Episcopal church, in the city of Savannah, called Christ Church, and to their successors forever, whom I declare my residuary legatees, to be by them held or applied to and for the use and benefit of the said church in such manner as they may deem best for its interest.'

A codicil to this will bequeaths to said wardens of Christ Church seven shares of the stock of the Merchants' National Bank in trust to pay over the dividends to Wm. Waters, a former slave of testatrix, during his life, and after his death, 'to hold said stock to the said the church wardens and vestrymen of the Episcopal church, in the city of Savannah, called Christ Church, with the rest and residue of my estate as provided, declared and bequeathed in the eighteenth item of my said will.'

If we do not adopt the view which is favorable to the contention of this complainant, it is not the fault of the distinguished counsel,

who have so ably and earnestly maintained it. The authorities which they have so industriously collated, and the arguments by which these authorities have been so skillfully enforced, have received the most careful consideration of this court. More than ever has that consideration impressed us with the slight utility of precedents in the determination of questions of this character. Here, as always in the construction of a will, the great purpose is to discover and to effectuate the intention of the testator.

To us it is perfectly apparent that the words 'personal effects,' as used in the 17th item of this will, are employed in a restrictive sense; that they were intended by Miss Young to embrace only 'effects' of 'personal' use, like 'jewelry and silver;' that they were not intended to operate on the residuum of her personal estate, but that this entire residuum is clearly and certainly bequeathed to Christ Church, named as the residuary legatee in the 18th and last item of the will.

This bequest of 'silver, jewelry and other personal effects' is accompanied with the statement that the testatrix has already communicated to her friend, Miss Welman, her wishes on the subject. These wishes are not declared in the will. They have been confided to Miss Welman. They are to control her disposition of these 'personal' effects. This language is entirely comprehensible and reasonable when applied to articles having but slight pecuniary value, having a value derived chiefly from association and personal use. This language is entirely incomprehensible and unreasonable, if applied to the valuable property, aggregating some $25,000, which formed the residuum of this personal estate. It is evident that the testa-. mentary scheme of Miss Young was by her carefully considered as to its minutest details. It is likewise evident that her purpose was to express this scheme with particularity and certainty in her will. This scheme involves a number of individuals and institutions made the recipient of pecuniary bounties, each being carefully described— the recipient of ten shares of stock, the recipient of five shares, the recipient of the income during life from seven shares. With this evidence of careful and particular direction afforded by these legacies, how can it be assumed that, in disposing of the great bulk of her personal estate, this testatrix left undefined and undeclared the trusts which were to govern its use?

The gift of these 'effects' is not an absolute gift. The 'wishes communicated' impress upon it a trust, a most important and responsible trust, if it involves the disposition of this large personal estate. What were these wishes? What the trust? Who and what were to be its beneficiaries? Miss Young was without kindred. She particularizes the different persons and objects that she seems to have associated with her testamentary scheme. What other wishes can be reasonably imputed to her, that are to operate upon quite the moiety of her fortune, save those wishes of which (as we conceive) her will

·contains the specific declaration? We think that the language employed in connection with this bequest, and to which we have adverted, in itself furnishes a convincing and unanswerable argument against the construction which is maintained by the complainant.

The eighteenth and last item of this will bequeaths all the rest and residue of this estate, not thereinbefore specifically devised, of what kind soever and wheresoever located, to the wardens of Christ Church, who are declared to be the residuary legatees.

Here is an express gift of the entire estate, excepting only that which has been before specifically devised. Of the ·personal property, besides furniture, silver and jewelry, the only specific devises are of certain shares of stock that are set apart from the general estate, and particularly bequeaths to those designated in the items which precede the seventeenth. All is given to Christ Church, except these specific devises.

If the ' rest and residue' of the estate here bequeathed in terms so clear and comprehensive to Christ Church, is not to embrace personal property, it practically embraces nothing. The only real estate possessed by this testatrix was the house and lot specifically devised to this church in the third item. There was no possible source from which she could expect any sensible accretion to her estate before her death. Nothing can be clearer than the intention, which is here manifested, to bestow upon her church her entire estate, save only these specific bequests before mentioned.

Again, in the codicil this purpose is made evident when she directs that, after the death of William Waters, who is to receive the income from seven shares of stock during his life, said seven shares shall be held by the wardens, etc., of said church, ' with the rest and residue of my estate as provided, declared and bequeathed in the eighteenth item of my said will.'

This venerable lady had been a devoted member of Christ Church for many years. She was without kith or kin. She ' was born young and would die Young,' was her facetious response to the pleasant sallies of her counsel. Her friend, likewise advanced in years, was possessed of an ample fortune of her own, and stood in no need of any one's bounty. What more natural and reasonable, then, than that this testatrix should wish to contribute the fortune with which Providence had endowed her to the advancement of the sacred mission of her church.

To this friend she gives those articles of personal use, valuable only for their association, ' having communicated to her her wishes on the subject.' To this friend she entrusts the delicate duty of rearing memorials to her deceased mother and aunt. To the estimable lady who files this bill, we are sure no largess could be so grateful as this legacy of love.

We concur with counsel for complainant that we are not at liberty

to consider the parol declarations of intention that have been offered. Such evidence is admissible only in exceptional cases. We do not think there is any ambiguity in this will, and if there were, it is not of that character to render such testimony competent. Nor do we think it necessary or proper to resort to the memorandum, or the old will, in interpreting the meaning of this testament. We need not go beyond the four corners of this will to find its meaning clearly manifested.

The state of facts which surrounded the testator the judicial expositor should always regard."

If we resort to extraneous circumstances, and to other facts in proof, especially to the former will of testatrix, and the facts which led to the changes made by the codicils thereto, as well as in the present will, in relation to the personal bequests made to Miss Welman, the complainant in this bill, we shall find abundant confirmation of the correctness of the result reached by this decree. These facts and the provisions of the will leave no doubt upon our mind that the testatrix intended that the great bulk of her property should vest in the wardens and vestry of Christ Church as her residuary legatees, and if there could be the least question upon that point, it would be settled by the citation of authorities relied on by counsel for the defendants in error, which will be found in the reporter's statement of the case.

Judgment affirmed.