(112 So. 360)

**TUCKER et al. v. HOUSTON et al.**
**(7 Div. 716.)**

Supreme Court of Alabama. April 7, 1927.

1. **Exceptions, bill of** ☞36(3)—**Bill of exceptions in will contest, presented within 90 days after decree overruling motion for new trial, held timely (Code 1923, § 6433).**

In will contest, bill of exceptions presented within 90 days from decree overruling motion for new trial, *held* timely filed, under Code 1923, § 6433.

2. **Wills** ☞366—**Appeal bond in will contest, filed within six months after overruling motion for new trial, held timely (Code 1923, § 6127).**

In will contest, bond for appeal, filed within six months from decree overruling motion for new trial, *held* timely, under Code 1923, § 6127.

3. **Jury** ☞87—**Members of Methodist Church held not incompetent jurors in contest of will naming Methodist college as principal legatee.**

In contest of will naming Methodist college as principal legatee, refusal to sustain challenge to jurors on ground that they were members of Methodist Church *held* not error.

4. **Wills** ☞282—**Allegation that will was not will of deceased held not to raise issue of undue influence.**

Amended bill in will contest, charging only that purported will was not the will of deceased, *held* insufficient to raise the issue of undue influence.

5. **Appeal and error** ☞1048(2)—**In will contest, question asking witness' opinion of his own competency to express opinion as to testatrix's mental capacity, though objectionable, held not reversible error.**

In will contest, question asked minister, "In your opinion, did you know her [testatrix] well enough, or possess sufficient acquaintance with her to express an opinion as to whether she was of sound or unsound mind?" though objectionable as asking witness' opinion as to his own competency, *held* not reversible error, where witness had already and in answer to the question stated facts justifying court in admitting his opinion.

6. **Evidence** ☞498½—**Competency of witness is question for court.**

In will contest, competency of witness is question for court.

7. **Evidence** ☞537—**Medical expert, who had known and consulted with testatrix, held competent to express opinion as to her sanity.**

In will contest, medical expert in mental diseases, who had known testatrix during her lifetime and consulted with her concerning her health a short time before her death, *held* competent to express an opinion as to her sanity.

8. **Evidence** ☞474(4)—**Witnesses who had collected rent and supervised repairs for testatrix held qualified as nonexperts to express opinion as to her sanity.**

In will contest, witnesses who had collected rents and supervised repairs for testatrix and discussed related matters of business *held* qualified as nonexperts to express opinions as to her mental capacity.

9. **Evidence** ☞498½—**Competency of nonexperts to express opinions as to mental capacity is question for trial court's discretion.**

Competency of nonexpert witnesses to express opinion as to mental capacity of testatrix is a matter within the sound discretion of the trial court, not to be revised except for palpable abuse.

10. **Evidence** ☞474(4)—**Bank officer held qualified to express opinion as to mental capacity of testatrix.**

In will contest, vice president of large bank who had had business transaction with testatrix *held* qualified to express opinion as to her mental capacity.

11. **Evidence** ☞500—**Permitting bank officer testifying as to testatrix's mental capacity to state that bank had deposit account of $35,000,000 held not error as unduly impressing jury.**

Permitting bank officer testifying as to mental capacity of testatrix to state that his bank

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

had a deposit account of $35,000,000 *held* not error as calculated to unduly impress the jury with the prestige and importance of the witness.

**12. Wills ⬤═292—In will contest not involving undue influence, exclusion of evidence of financial condition of heirs of testatrix receiving small legacies only held not error.**

In will contest, where undue influence was not properly in issue, exclusion of testimony of the financial condition of numerous nephews and nieces of testatrix, to whom she left $100 each, and who in case of her intestacy would have been distributees of her estate worth $75,-000 or more, *held* not error.

**13. Evidence ⬤═474(4)—In will contest, testimony that testatrix was under influence of morphine held properly excluded, in view of witness' incompetency.**

In will contest, exclusion of testimony that testatrix was under the influence of morphine "right before the will was made" *held* not error, where witness was not competent to express opinion and had no knowledge of facts showing administration of drug.

**14. Wills ⬤═400—In will contest, exclusion of testimony affecting insanity in testatrix's family held not reversible error.**

In will contest, exclusion of questions relative to insanity in family of deceased *held* not reversible error, in view of form of questions and other evidence.

**15. Wills ⬤═292—Evidence of transactions after testatrix's death for purpose of executing devise held inadmissible in will contest.**

In will contest, evidence of transactions several years after testatrix's death for purpose of putting into execution devise to college *held* properly excluded.

**16. Wills ⬤═225—Death of testatrix few days after will was made was not ground for setting it aside.**

In will contest, instruction that, if testatrix was of sound mind, the fact that she died a few days after will was made was no reason for setting it aside, *held* proper.

**17. Trial ⬤═256(2)—Party objecting to instruction as misleading should request explanatory charge.**

Litigant, believing an instruction given to be misleading, should request an explanatory charge.

**18. Wills ⬤═330(1)—Instruction that testatrix was of sound mind if she knew her property and desired disposition and understood business at hand held proper; it being fairly inferable therefrom that she knew objects of her bounty.**

In will contest, instruction that, for testatrix to be of sound mind, it was not necessary that her memory should be perfect or her mind absolutely unimpaired, but sufficient if she had mind and memory enough to recollect the property she was to bequeath and the manner in which she wished it to be disposed of, and knew and understood the business she was engaged in, *held* not error; it being fairly inferred that,

if she understood the business she was engaged in, she knew the objects of her bounty.

**19. Wills ⬤═52(1)—Complainant in will contest has burden of proof of want of mental capacity.**

In will contest, burden of proof of want of testamentary capacity is on complainant.

**20. Wills ⬤═329(1)—In will contest, instruction that heirs would take property if contestant prevailed held properly refused.**

In will contest, instruction that, if verdict was found for contestants, the heirs at law of testatrix would take equally and share alike of her property, *held* properly refused as of no concern to jury.

**21. Trial ⬤═240—In will contest, instruction affecting unnatural disposition of property as evidence of mental incapacity held properly denied as argumentative.**

In will contest, instruction that, if jury found testatrix had devised nearly all her property to strangers and that the disposition was unnatural, jury should carefully scrutinize the disposition to determine whether it was so unnatural as to warrant inference of mental incapacity, *held* properly denied as argumentative.

**22. Trial ⬤═251(2)—In will contest, instruction on issue not pleaded held properly refused.**

In will contest, requested instructions on issue of fraud not pleaded *held* properly refused.

**23. Wills ⬤═330(2)—Instruction affecting "mental delusion" rather than "insane delusion" held erroneous and otherwise unwarranted by evidence.**

In will contest, instruction as to effect of "mental delusion" *held* erroneous, in the use of the quoted language instead of "insane delusion," and otherwise unwarranted by the evidence.

Appeal from Circuit Court, Calhoun County; R. B. Carr, Judge.

Bill in equity by Charlie Tucker and others against Mack Houston and others. From the decree, complainants appeal. Affirmed.

The following charges were given at the request of defendants:

"G. If a will is made by a person of sound mind, the fact that she died a few days thereafter, would offer no just or valid reason to set aside such will."

"J. The court charges the jury that, if they believe from the evidence that Mrs. Johnson, at the time she made the will, had a sound and disposing mind, then it would be their duty to sustain the will. The court further charges the jury that, for her mind to be a sound, disposing mind, it is not necessary that her memory should be perfect and her mind absolutely be unimpaired. If she had mind and memory enough to recollect the property she was to bequeath and the manner in which she wished it to be disposed of, and to know and understand the business she was engaged in, then, in

contemplation of the law, she had a sound and disposing mind; and, in such event, bodily infirmity and impairment of the mind, if her mind was impaired, and the near approach of death, would of themselves not vitiate a will thus made.

"K. The court charges the jury that the only issue in this case is whether or not Mrs. Johnson had testamentary capacity at the time the will was made, and the burden of showing a want of testamentary capacity is on the complainant, and, unless the evidence shows to the reasonable satisfaction of the jury that Mrs. Johnson did not have testamentary capacity, as such testamentary capacity has been defined by the court, then the jury should return a verdict in favor of the defendants, sustaining the will."

. The following are requested charges which were refused to complainants:

"(4) If the verdict of the jury in this case is in favor of the complainants, then the heirs at law of Mrs. Johnson will take equally and share and share alike all of her property."

"(9) I charge you that, if you are reasonably satisfied from all the evidence in this case that Margaret T. Johnson under her will devised nearly all of her property to strangers, and if you further find from all the evidence to your reasonable satisfaction that such disposition was an unnatural one, it is your duty to carefully scrutinize the testamentary disposition of her property so that under all the facts in proof, you can determine whether her will makes such an unnatural disposition of her property as would lead you to infer that she was mentally incapacitated to make said will at the time the same was signed.

"(10) The court charges the jury that, if they are reasonably satisfied from all the evidence that on the same day on which she signed the instrument offered in this case as the will of Margaret T. Johnson, she had given instructions to one W. H. Woolverton as to the disposition of her property by will, which directions were then put in writing by him at her instance, and in her presence, and that the will as thereafter written by said Woolverton was materially different from such written memorandum, and that the will as written by Woolverton was not read over to her before she signed the same, and that she signed the same believing that it was in accord with her previous instructions, then, the court charges, as a matter of law, that such will was not spontaneous act and will of Margaret T. Johnson.

"(11) If the nature of the trusts created by this will were not fully understood by Mrs. Johnson at the time she made the will, or if trusts were created by the will, as written by the attorney, which she did not understand, then the jury may consider this fact in connection with all the evidence as to whether the alleged will is her spontaneous act, or whether she was moved to the making of the will by suggestion of others.

"(12) It is one of the elements of mental capacity as applied to the facts in this case that the act of making the alleged will was the spontaneous act of her mind, not moved to the making of this by prompting or suggestion of others.

"(13) I charge you that, if you are reasonably satisfied from the evidence that, on the day the alleged will was made, Mrs. Johnson was suffering from a mental delusion that her people had not been giving her sufficient care and attention, and if you are further reasonably satisfied that the will was the result of such delusion, then your verdict should be in favor of the contestants."

Theo. J. Lamar and W. A. Weaver, both of Birmingham, and Rutherford Lapsley, of Anniston, for appellants.

Stockholders in bodies corporate or members of unincorporated societies are disqualified to sit on a jury where the corporation or society is a party defendant. Cleage v. Hyden, 6 Heisk. 73; Searle v. Roman Catholic Bishop, 203 Mass. 493, 89 N. E. 809, 25 L. R. A. (N. S.) 992, 17 Ann. Cas. 340. The competency of a witness to testify as to one's own mental condition is a question of law, to be decided from the facts. Moore v. Spier, 80 Ala. 129; Ford v. State, 71 Ala. 385. Sufficient acquaintance with the testatrix was not shown by the witness Stuart to permit him to testify as to her mental condition. Walker v. Walker, 34 Ala. 469. The financial condition of the nieces and nephews of the testatrix was competent to be shown. Fountain v. Brown, 38 Ala. 72; Stubbs v. Houston, 33 Ala. 555; Johnson v. Armstrong, 97 Ala. 731, 12 So. 72. Whether testatrix, at the time of making the will, was under the influence of morphine, was competent. Stedham v. Stedham, 32 Ala. 525. It was error to refuse to permit testimony as to whether there was insanity in testatrix's family. 14 Ency. Evi. 360. Transactions between the executor and the Princeton Land Company was relevant. Grimes v. State, 63 Ala. 166. Charge J, given for defendants was bad. 12 Michie's Ala. Dig. 958. Charge 9 correctly states the law, and should have been given. Knox v. Knox, 95 Ala. 495, 11 So. 125, 36 Am. St. Rep. 235. Where undue influence has been exerted, inducing the execution of a will, the instrument is not the will of the testatrix. McQueen v. Wilson, 131 Ala. 606, 31 So. 94; Noble v. Moses, 81 Ala. 540, 1 So. 217, 60 Am. Rep. 175. It is not necessary, in the contest of a will for undue influence, to allege the quo modo with particularity. Barnett v. Freeman, 197 Ala. 142, 72 So. 395; Alexander v. Gibson, 176 Ala. 258, 57 So. 760. The appeal is taken in time. Code 1923, 6433; Lewis v. Martin, 210 Ala. 401, 98 So. 635; Florence C. & I. Co. v. Field, 104 Ala. 471, 16 So. 538; Cox v. Birmingham, 21 Ala. App. 341, 108 So. 622.

Knox, Acker, Sterne & Liles, of Anniston, for appellees.

No appeal can be taken from a ruling on motion for new trial in an equity case. Ex parte Colvert, 188 Ala. 650, 65 So. 964; Kilgore v. T. C. I. Co., 191 Ala. 189, 67 So. 1002. The ruling on motion for new trial

does not extend the time for filing bill of exceptions or for taking appeal. Code 1923, § 6433; Sorsby v. Wilkerson, 206 Ala. 190, 89 So. 657. No ground of contest was available to contestants, unless specified in the pleadings. Grounds of contest as for undue influence should name the persons averred to have exerted it. Barksdale v. Davis, 114 Ala. 623, 22 So. 17; Johnson v. Johnson, 206 Ala. 523, 91 So. 260; Daggett v. Boomer, 210 Ala. 673, 99 So. 181. There was no error in the refusal of the court to qualify the jury with reference to membership in the Methodist Church. In re Bowman, 67 Mo. 146; Ex parte State Bar Ass'n, 92 Ala. 113, 8 So. 768; Burdine v. Grand Lodge, 37 Ala. 478. The ruling of the chancellor upon the competency of witnesses to testify as to the mental condition of testatrix will not be reviewed, unless clearly erroneous. Ford v. State, 71 Ala. 385; Parrish v. State, 139 Ala. 42, 36 So. 1012; Johnson v. Johnson, 206 Ala. 523, 91 So. 260; Wear v. Wear, 200 Ala. 345, 76 So. 111. Charge J correctly stated the law. Byars v. Smith, 203 Ala. 66, 82 So. 26; Knox v. Knox, 95 Ala. 495, 11 So. 125, 36 Am. St. Rep. 235; Taylor v. Kelly, 31 Ala. 59, 68 Am. Dec. 150; McBride v. Sullivan, 155 Ala. 169, 45 So. 902; Stubbs v. Houston, 33 Ala. 555. Charge 13 was defective. McBride v. Sullivan, supra; Rush v. Megee, 36 Ind. 69.

SAYRE, J. [1, 2] The last will and testament of Margaret T. Johnson, deceased, was contested by appellants by a bill filed on the equity side of the circuit court of Calhoun. Complainants (appellants) demanded a trial by jury, and, such trial being had, a verdict was returned in favor of the validity of the will, and on November 11, 1925, the court entered its decree in agreement with the verdict. November 30th, thereafter, complainants "moved the court to set aside the verdict of the jury and judgment of the court in this cause." December 5th the motion was overruled. A bill of the exceptions reserved at the trial by jury was presented to the judge who presided at the trial on March 1, 1926, and a bond for appeal was filed and approved June 2, 1926. A bill of exceptions must be presented to the judge or clerk at any time within 90 days from the day on which judgment is entered, but presentation of the bill within 90 days after the granting or refusing of a motion for a new trial is sufficient to preserve for review the rulings of the trial court on the trial of the original cause, as well as the ruling of the court on the motion for a new trial. Section 6433 of the Code. An appeal in the ordinary case must be taken within six months from the rendition of the judgment or decree. Section 6127 of the Code. It will be observed that, if the presentation of the bill of exceptions and the filing of the bond for appeal be dated from the decree of November 11, 1925,

both came too late; but, if dated from the decree overruling the motion for a rehearing —new trial, it is called—both were within the time prescribed by statute. In Lewis v. Martin, 210 Ala. 401, 98 So. 635, the trial of the issue of devisavit vel non before a jury is likened in every respect to the trial of a civil case at law. The court in that case went so far as to hold that, pending a motion for a "new trial or rehearing," the decree does not become final and will not support an appeal, and that rule 81 of chancery practice has no application to a case of this character. In other words, it was ruled that, notwithstanding the bill to contest a will must be filed on the equity side of the court, it is to all intents and purposes an action at law. This seems to the writer to be at variance with the decisions in Ex parte Colvert, 188 Ala. 650, 65 So. 964, and Kilgore v. T. C. I. & R. Co., 191 Ala. 189, 67 So. 1002; but the court here and now prefers to stand by the precedent afforded by Lewis v. Martin, supra. Accordingly, the motions to strike the bill of exceptions and to dismiss the appeal are both overruled.

[3] Birmingham College, now known as Birmingham-Southern College, a Methodist institution, was named in the will of deceased as residuary legatee, and this made it the largest beneficiary under the will. Appellants sought to challenge a number of jurors on the ground that they were members of the Methodist Church. As members of the Methodist Church, these jurors had no pecuniary interest in the issues involved, and the court committed no error in overruling appellants' objection to these jurors. Ex parte State Bar Association, 92 Ala. 113, 8 So. 768; Burdine v. Grand Lodge, 37 Ala. 478.

[4] Appellants by numerous assignments of error seek to get before the court their proposition that they were entitled to have the jury consider the question of undue influence on the part of Woolverton, who prepared the will in contest at the instance and request of testatrix and was in it named as executor. Our opinion is that no such issue was propounded by the contest filed, and hence there was no error in excluding from the jury all evidence or refusing instructions by which appellants sought to raise the question.

The original bill averred as grounds of contest (1) "the said Margaret T. Johnson [testatrix] was of unsound mind"; and (2) she "did not have testamentary capacity." By an amendment it was charged that "the said purported will of the said Margaret T. Johnson is not the will of the said Margaret T. Johnson." These averments related to the time of the execution of the will, as the original and amended bill sufficiently showed. No objection by demurrer to these averments was taken. By them and the denials of the main defendant, the Birmingham-Southern College, an issue was formed as to the testamentary capacity of testatrix. When it is determined

that the proponent or any interested party has exerted undue influence, thereby inducing the execution of the will, such instrument is not the will of the deceased by whom it was executed. But this proposition has nothing to do with the construction of the pleadings in a cause of this character. It is far from the equivalent of an assertion that, to raise the issue of undue influence, it suffices to allege merely that the instrument in contest is not the will of deceased. It has been held, very correctly of course, that, to require the contestant, who would contest a will on the ground of undue influence, to set out in detail the means by which the influence was acquired and the manner in which it was exercised, would require in most cases the impossible, since the knowledge of these facts most frequently, if not always, rests in those who are most interested in withholding it. Coghill v. Kennedy, 119 Ala. 641, 24 So. 459; Strickland v. Strickland, 206 Ala. 452, 90 So. 345; Alexander v. Gibson, 176 Ala. 258, 57 So. 760; Barnett v. Freeman, 197 Ala. 142, 72 So. 395. And in Letohatchie Church v. Bullock, 133 Ala. 548, 552, 32 So. 58, 59, McClellan, C. J., summed up the authorities of antecedent date as follows:

"We have never understood it to be necessary to allege with particularity the quo modo the result complained of was accomplished, but only that it was accomplished by undue influence exerted by named persons. * * * Hence it is that the averment should be rather of the result than of the particular and special acts and modes of causation."

Appellants, we may presume, had in mind a part of the statement quoted above when they framed the amendment of the bill heretofore stated. But it seems clear they overlooked, avoided, or ignored that part of the statement in which it was said, in effect, that it is necessary in such cases to aver that the execution of the instrument in contest was accomplished by undue influence exerted by named persons. That this would have been held on demurrer to be a fatal oversight has been ruled in later cases. Johnson v. Johnson, 206 Ala. 523, 91 So. 260; Daggett v. Boomer, 210 Ala. 673, 99 So. 181. We would not impose the duty upon the court, nor confer the privilege, of demurring to bills brought to contest wills. But our opinion is that, if appellants desired to contest the alleged will on the ground of undue influence, they should have so informed the court, and were properly not allowed to require the court, as often as appellants proposed some action on its part, to cast about for some possible ground, some relevant issue unstated in the pleadings, on which to rule in agreement with appellants' contention. As the case was, the averment that "the said purported will * * * is not the will" of deceased, without more, no more expresses one possible ground of contest than another. It did no more than express the desire of appel-

lants to contest the will of deceased on some unstated ground. In the presence of such pleading, the court must be justified in judging all questions raised between the parties, apart from questions as to the sufficiency of pleadings, on the basis of their relevancy to the one stated ground of contest, viz. the testamentary capacity vel non of the deceased; nor can it be put in error that it refused to accommodate its rulings to the mere verbal interpretations of counsel, if any such were offered to the court, to the effect that undue influence was an issue in the cause. This will serve to indicate our judgment as to many of the assignments of errors argued in the briefs for appellants.

[5, 6] It may be conceded that the question asked of Dr. George R. Stuart, a minister of the Gospel, whether, "in your opinion, did you know her [testatrix] well enough, or possess sufficient acquaintance with her, to express an opinion as to whether she was of sound or unsound mind?" was objectionable as asking for the opinion of the witness as to his own competency rather than the facts on which the court would adjudge his competency; but the witness had already stated, and again in answer to this question stated, facts which abundantly justified the court in admitting the opinion of the witness, that testatrix was of sound mind at and about the time of the execution of her proposed will, as competent evidence. The competency of the witness was certainly a question for the court, and the court correctly ruled that the witness was competent when his answer to this and other questions of like import were allowed to go to the jury. Ford v. State, 71 Ala. 397; Parsons v. State, 81 Ala. 577, 2 So. 854; Jones v. State, 181 Ala. 80, 61 So. 434.

[7-9] As for the witness Dr. H. S. Ward, he was shown to be a medical expert in the relevant line of mental disease, had known deceased during her lifetime, and had consulted with her on the subject of her health a short time before her death. He was competent to express an opinion as to her sanity, the force and value of that opinion being a question for the jury. White v. State, 133 Ala. 126, 32 So. 139. And these observations in our opinion sufficiently answer a number of the assignments of error raising substantially the same or similar questions. However, we will say of the witness Reese, who had collected rents and supervised repairs for testatrix and discussed with her related matters of business—she being interested in the sale and leasing of negro property in Birmingham, some 200 lots or more, and of the witness Leila Leslie, who had known testatrix for many years, a considerable degree of intimacy having existed between their families—we would say of them that they were qualified as nonexperts to express opinions as to the mental capacity of testatrix, and that, even though we had some doubt as to that, as we have not, the matter of

admitting their testimony must be left to the sound discretion of the trial court, not to be revised except for palpable abuse (Odom v. State, 174 Ala. 4, 56 So. 913), of which, in this case, we find no indication whatever.

[10, 11] As for the witness J. Knox Fleming, according to the standard of qualification already accepted in this case, he was competent to testify concerning the sanity of testatrix. His qualifying testimony was that he was an active vice president of a bank in Birmingham—testatrix had lived in Birmingham—"the largest bank in Alabama," and in that relation had had business transactions with testatrix. Appellants complain that this witness was allowed to say that his bank had a deposit account of $35,000,000. They complain that this testimony was calculated to impress the jury unduly with the prestige and importance of the witness. We do not find reversible error in this ruling by the court. The jury were entitled in a general way, the reasonable limits of which were to be set by the court, to be informed as to what manner of man the witness was. As we said in Barfield v. South Highlands Infirmary, 191 Ala. 568, 68 So. 36, Ann. Cas. 1916C, 1097:

"It is common practice to introduce a witness with inquiries of this character, though they be of slight or no importance as decisive factors in the case."

[12] The trial court excluded testimony as to the financial condition of the numerous nephews and nieces of testatrix, to whom she left $100 each, and who, in case of her intestacy, would have been distributees of her estate worth $75,000 or more. This testimony would have been relevant and material had the issue of undue influence been presented by the pleadings (Stubbs v. Houston, 33 Ala. 555; Fountain v. Brown, 38 Ala. 72); but we have heretofore stated our reasons for holding that the court cannot be convicted of error in refusing to treat that as an issue in the cause.

[13] The court committed no reversible error when it refused to hear the testimony of Smith that testatrix was under the influence of morphine "right before the will was made." This witness knew nothing of any morphine having been administered, as he testified, nor did it appear that he was competent to give an opinion on that subject, in the absence of knowledge of the facts which would show an administration of the drug. Witness had no such knowledge.

[14] We are unwilling to reverse the decree in this cause on account of those rulings of the court by which appellants were denied the right to ask the witness Fannie Harrison about insanity in the family of deceased. The several questions designed to elicit the desired information were hardly framed as they should have been. The question, "Was there insanity in the family?" was entirely too general. There may have been insanity "in the family" so remote or of such character as to afford no probability whatever that testatrix was insane. 14 Ency. Ev. 359, 360. Appellants appear to have had in mind the case of a sister "who died in the asylum." The inquiry did not ask for the mental state of the sister, but for a circumstance that may have had no relation to that state. Moreover, we understand appellants' question to have reference to a Mrs. Scott, as to whom, by another witness in probably a better position to know, it was shown without dispute that she died insane.

[15] Transactions between the witness Reese and the Princeton Land Company several years after the death of testatrix, and the deed by which Woolverton put into execution the devise to the Birmingham-Southern College, was excluded without error. These transactions could shed no light upon the only litigable question in the case, viz. the testamentary capacity of testatrix. The title of the subdivision lots heretofore mentioned was in the Princeton Land Company. But testatrix was the owner of that company for all practical purposes. Reese and Woolverton each owned a single share. But we do not see how the transactions inquired about reflected upon the integrity of these witnesses or tended to impeach their testimony as interested witnesses.

[16, 17] The proposition of charge G, given at the request of appellees, is certainly sound; if in the least misleading, as appellants think it was, the available remedy was to request an explanatory charge.

[18] Charge J was also given without error, as our cases hold. 12 Mich. Dig. p. 958. If, as the charge hypothesizes, testatrix knew and understood the business she was engaged in, when making her will, it may be fairly presumed that she knew the objects of her bounty. Bulger v. Ross, 98 Ala. 271, 12 So. 803.

[19] In charge K the court correctly stated the issue and the burden of proof. 12 Mich. Dig. supra, § 25.

[20] Charge 4, requested by appellants, was properly refused. It was no concern of the jury what became of the property of testatrix in the event the will was set aside.

[21] Charge 9 was an argument.

[22] Charge 10 sought to raise an issue of fraud not pleaded. It was properly refused. So of 11 and 12.

[23] Charge 13 was faulty, for one thing at least, in that it predicated invalidity of the will on "mental delusion," whereas any delusion, to have that effect, must have been an "insane delusion." McBride v. Sullivan, 155 Ala. 173, 45 So. 902. We doubt that there was evidence which, even though undisputed, would have authorized a finding of delusion in any sort.

Other assignments of error have been disposed of by our statement as to the issue of undue influence.

The motion for a "new trial," as it is referred to in the brief, raised nothing new.

The decree is affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.