Appellant was convicted of grand larceny. The court fixed his punishment at imprisonment in the penitentiary for thirteen months and sentenced him accordingly. The property allegedly stolen was set forth in the indictment as "one stove, a better description of which is unknown to the Grand Jury, of the value of $67.46, one refrigerator, a better description of which is unknown to the Grand Jury, of the value of $75.00, all of the aggregate value of $142.46, the personal property of The Housing Authority of the City of Montgomery, Alabama."
Appellant presents only two issues for review:
1. Whether there was sufficient evidence to sustain a verdict that defendant was guilty of larceny.
2. Whether there was sufficient evidence to sustain a finding that defendant was guilty of grand larceny, it being the contention of appellant that there was no substantial evidence that the property stolen had a "value of $25.00 or more."
There was testimony by a police officer of Montgomery that about 9:00 P.M. on August 20, 1978, he observed defendant and two other men near the door to apartment 805 North Union Circle, an apartment of the Montgomery Housing Authority; they were between the door and an automobile parked behind the apartment; the automobile had its headlights on. Defendant was *Page 419 
asked to identify himself, and he responded by giving his driver's license. There was a stove in the trunk of the car and a refrigerator in the doorway of the apartment. Defendant told one of the officers "that the refrigerator and the oven belonged to him and that he was moving."
The stove and refrigerator were identified by employees of the Montgomery Housing Authority as property of the Authority that formed a part of the equipment furnished 805 North Union Circle, where defendant had previously been a tenant.
Defendant testified that he had moved most of his furniture out of the apartment on August 19, 1978, but that he returned on August 20 in his automobile and had two men with him to help him get some "bunk beds and parts that go to my car" that were left at the apartment. He said he left the apartment for a few minutes, having told the other men "just get the bunk beds and parts that go to my car"; that when he returned he noticed they had placed the stove in the automobile and that the refrigerator was in the doorway. He denied having any part in the removal of either the stove or refrigerator.
Defendant further testified that upon his apprehension he told the officers that the stove and refrigerator belonged to him, that his wife had purchased the stove prior to her death. He said that such statement to the officers was not true and made no claim in his testimony that either the refrigerator or the stove belonged to him. He testified also that he was not with the other two men at the time the officers first arrived.
The difference between testimony of one of the officers and the testimony of defendant cannot be so reconciled as to require acceptance of both as true. The issue as to his guilt of larceny was within the province of the jury.
In arguing that the evidence does not show that the property stolen was worth as much as $25.00, appellant emphasizes the fact that no witness testified that in his opinion the property was worth that much at the time of the theft, which is the usual method of proving value of property. The only witness as to the value of the stolen property was Mrs. Sarah Franz, the purchasing and property control officer for the particular housing project. She, as a witness for the State, was not asked by either party as to her opinion as to the reasonable market value of the property at the time of the theft, even though it appears from the lengthy examination and cross-examination of her that she would have qualified as a witness to express her opinion on that important question. Her testimony was in material part as follows:
"Q. Then those items were seven years old?
"A. That is right.
"Q. As of August of '78?
"A. That is right.
 "Q. Okay. Now, do you remember — does your information also reflect what price was paid for these items when they were initially bought?
"A. Yes, ma'am.
 "Q. Does that appear on State's Exhibit Three and Four?
"A. Yes, it does.
". . .
 "Q. Now, will you please tell us what it cost to buy the stove?
"A. Now?
"Q. When that very stove was purchased?
"A. 60-7 40-6.
 "Q. All right. Now, if you had to buy it today do you know how much it would cost?
"A. Approximately one hundred and forty dollars.
"Q. Now, you do the purchasing?
"A. Yes.
". . .
 "Q. Would you please tell us, if your records reflect, what it cost to buy that very refrigeration in 805?
"A. What it would cost now or did?
"Q. What it did cost?
"A. A hundred and ten eighty-nine.
"Q. Are you familiar with the price of refrigerators? *Page 420 
"A. Yes.
". . .
 "Q. Okay. Are you familiar with what it would cost to replace the refrigerator today?
 "A. It would cost, to replace this one, approximately a hundred eighty dollars."
The above quoted testimony was given on direct examination and was without any objection by defendant. On cross-examination the witness testified as to the life of the stove and refrigerator:
 "Q. Okay. Back then. Approximately how long did they ordinarily last?
"A. I would say they last ten to fifteen years.
"Q. And the refrigerator?
"A. Approximately the same."
Larceny from some places specified in Ala. Code 1975 § 13-3-50, including "from or in any dwelling house," constitutes grand larceny if the value of the property is $5.00 or more," but the State did not elect to prosecute under that specific provision of the law. It follows that if the property stolen did not have a value of $25.00 or more, defendant could have been properly convicted of petit larceny only, as inhibited by Ala. Code § 13-3-51, a misdemeanor, for which he "shall be imprisoned in the county jail, or sentenced to hard labor for the county for not more than twelve months and may also be fined not more than $500.00, at the discretion of the jury."
A defendant under an indictment for grand larceny may be convicted of petit larceny if the value of the property stolen is not enough to make it the subject of grand larceny. Bollingv. State, 98 Ala. 80, 12 So. 782 (1893); Storrs v. State,129 Ala. 101, 29 So. 778 (1901); Commander v. State, 28 Ala. App. 42,178 So. 241 (1938).
We have some reservation as to whether the value of the property stolen was as much as $25.00, but testimony as to what the property cost at the time it was purchased by its owner, what property like it would cost at the time of the alleged larceny, the usual life of such property, and the serviceability of the property at the time it was allegedly stolen, furnishes a substantial, though not the best possible, support for a finding by the jury that the property was worth as much as $25.00, that is, that defendant was guilty of grand larceny.
There are additional considerations that preclude a reversal of the judgment of conviction and sentence, even if it should be said that there is not substantial evidence of the requisite value of the property stolen.
At the conclusion of the evidence for the State and immediately upon the State's announcement that it rested, the jury was excused from the courtroom, and the following occurred:
 "MR. GOBRECHT: Your Honor, my Motion is for a directed verdict of acquittal. I do not believe the State has proved beyond a reasonable doubt Mr. Johnson stole anything. I don't know that they have proved that anybody stole anything. They certainly haven't proved a felony value in this case.
 "So, my Motion is in two parts: That is you don't grant the verdict of acquittal that you direct that the case proceed on the theory of a misdemeanor, at most. I haven't heard one bit of evidence presented by the prosecution that the Defendant had any part in stealing anything. The State has not proved whose car that was, the State did not elicit a statement from a witness that — Well, to the effect that the Defendant saying, it is my stove and refrigerator. But that doesn't mean that he took it.
 "I move that the court order all the evidence stricken and that the charges against the Defendant be dismissed.
"THE COURT: What says the State?
 "(Whereupon, argument was presented to the Court by the respective attorneys, after which the following occurred:)
"THE COURT: I'm going to deny your Motion to Exclude.
 "MR. GOBRECHT: All right. The Defense is ready to proceed. Your Honor, And I call the Defendant to the stand." *Page 421 
Assuming that there was no evidence as to whether the property had a value of $25.00 or more, if it had any value, as to which there is no issue between the parties, defendant would not have been entitled to a favorable ruling on his motion to exclude the evidence; he would not have been entitled to a directed verdict of acquittal or the equivalent. The evidence would have justified a finding that he was guilty of petit larceny. The trial court was not in error in its ruling as to the motion of defendant at the close of the State's evidence.
In its oral charge, the court said:
 "Now, in your deliberations there is a — if you find that the value of the property — finding everything else being satisfied beyond a reasonable doubt from the evidence as to everything else but as to value — and if you find the value is under $25.00 you may find, however, the defendant guilty of petty larceny."
The court fully charged the jury as to its duty in the event if found defendant guilty of petit larceny and the form of its verdict in that event. In response to the court's questions at the conclusion of the oral charge, the following occurred:
"THE COURT: Defendant?
"MR. GOBRECHT: Satisfied, Your Honor.
"THE COURT: State?
"MS. BROOKS: The State is satisfied.
 "MR. GOBRECHT: The only thing I object to is your not giving the affirmative charge, which you refused."
The charge requested is as follows:
 "The Court charges you that if you believe the evidence in this case you must find the defendant `not guilty.'"
The giving of such charge would have precluded a verdict finding defendant guilty of petit larceny. The charge was properly refused.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.