Appellant was convicted in the circuit court, Madison County, of criminal trespass, second degree, and theft, second degree. On April 20, 1982, he was sentenced to 20 years' imprisonment under the Habitual Offender Act.
The one issue presented on appeal is whether Mrs. Jefferson, owner of the property alleged to have been stolen, and Officer Guthrie, an investigator for the Huntsville Police Department, were competent witnesses for the purpose of establishing the reasonable market value of the property alleged to have been stolen.
The evidence in this case shows that on September 29, 1981, Mary Jefferson left her residence at 3108 Holmes Avenue in Huntsville, Alabama, to go to work. Before leaving, she secured all entrances to her home. At approximately 11:15 that morning, Mack Yates, a witness for the State, heard the sound of a car backing up to a gate at the side of Mrs. Jefferson's home. He then saw appellant and another man enter the house through the front door. While the witness was getting the tag number from the car, he saw one of the intruders standing at the door with something at his feet and Mr. Yates then called the police. When the police arrived Officer Randy Byars of the Huntsville Police Department observed two men approach the gate and walk toward a Pontiac automobile parked near the gate. Upon being ordered to stop by this officer one of the individuals broke and ran. The other party, the appellant, was apprehended at the driver's side of the parked car. The trunk lid of this vehicle was up and the officer observed a color television sitting inside.
Mrs. Jefferson was called to the scene and she observed that her home had been ransacked, an air conditioner had been pushed out of a window and her ten-inch Sharp color television set had been placed in a garbage bag outside the fence by the parked car. In addition, she observed that her stereo system had been moved from her living room to the floor at the back door of her home. Mrs. Jefferson also noted one of her television sets sitting in the trunk of appellant's automobile.
Mrs. Jefferson testified that she bought the Quasar television set, found in the trunk of appellant's car, approximately seven years before for $500. Mrs. Jefferson testified that the Sharp color television set, found near the fence in the garbage bag, was a gift from her boyfriend and that he paid $300 for this set approximately three years before this incident. Further testimony *Page 208 
from this witness indicated that she would not sell this television set for less than $300 because it was a good set. Mrs. Jefferson further testified that she bought her stereo set and paid $750 for it three years before and that if she sold this stereo outfit on September 29, 1981, the date in question, she would not expect to sell it for less than $400. This witness further testified that she had had the occasion to shop around before and after September 29, 1981, to ascertain the price of television sets similar to hers and of stereo outfits similar in nature to her stereo and that if she were going to sell her Quasar television set on the open market she would have expected to receive $250 for this set. She testified that the condition of these items was excellent or good.
Later this witness testified that while such estimates might constitute a guess on her part, they were based upon her experience in dealing with such goods.
Phil Guthrie, a police investigator for the city of Huntsville, testified that he had been a burglary investigator for almost three years and that since entering this field he had investigated some 75 to 80 cases a month. He further testified that many of the burglaries and thefts he investigated involved personal property of a nature similar to that taken from the home of Mrs. Jefferson. This officer testified that he had had occasion to ascertain the fair market value of items similar to those involved in this case, including items of the same age and brand. Officer Guthrie stated that based upon his experience in the past and based upon his investigation of this particular case, he judged that the fair market value of the items involved in the Jefferson burglary would be as follows: $500 for the Quasar television set; $300 for the Sharp television set; and $400 for the stereo component system.
Defense counsel objected to the testimony of Mrs. Jefferson and Officer Guthrie upon the ground that neither of these witnesses had the experience or qualifications to testify to the fair market value of the property involved. At the conclusion of the state's case, defense counsel moved to exclude the evidence on the basis that the state had failed to prove a prima facie case. This motion was denied by the trial court and appellant appeals from his conviction.
Under the statutory law of this state it is provided:
 "Direct testimony as to the market value is in the nature of opinion evidence; one need not be an expert or dealer in the article but may testify as to value if he has had an opportunity for forming a correct opinion." Title 12-21-114, Code of Alabama 1975.
The statute clearly provides that a witness need not be an expert or dealer in an article, but may testify as to value if he has had an opportunity of forming a correct opinion. This is necessarily opinion evidence and not conclusive even when uncontradicted. If the valuations appear to be unreasonable, the estimate as to value may be discarded entirely.
The question of whether or not a witness has had an opportunity to form a correct opinion is a preliminary question to be passed upon by the court and is largely a matter within its discretion. This discretion will not be reviewed except in cases where it is clear that the ruling was unjust. Morris v.State, 25 Ala. App. 494, 149 So. 359 (1933). The competency of a non-expert witness is a question for the trial court. Whetstonev. Caudle, 54 Ala. App. 299, 307 So.2d 697 (1975), Tucker v.Houston, 216 Ala. 43, 112 So. 360 (1927). The degree of opportunity that the witness may have had for forming an opinion goes to the weight of the evidence and not to its admissibility. Blount County v. Campbell, 268 Ala. 548,109 So.2d 678 (1959).
As observed by the appellee in the instant case, the trial court properly allowed Mrs. Jefferson to testify as to the value of her televisions and her stereo because the owner of such property may testify to the value of such property without other qualifications where it is shown that such owner had the opportunity to form a correct opinion. The rationale behind this *Page 209 
general rule is that the fact of ownership itself renders the owner competent to testify to such value. C. Gamble, McElroy'sAlabama Evidence, § 128.11 (3d ed. 1977).
By Mrs. Jefferson's testimony, data was supplied upon which the jury could assess value. Lasley v. State, 418 So.2d 193
(Ala.Cr.App. 1982). Such evidence is viewed in light of the knowledge and experience of the jury, which factors are to be relied upon by the jury in determining the true value of the property in question. State v. Crawford, 277 Ala. 568,173 So.2d 109 (1965).
While jurors may not infer the existence of value from an inspection of the article itself, or from a description of it by witnesses, since this requires the jurors to become witnesses, Mitchell v. State, 24 Ala. App. 570, 139 So. 109
(1932), jurors may assess value upon a basis provided by circumstantial evidence. In this case Mrs. Jefferson was clearly familiar with the purchase prices, ages, past use and conditions of the specified items. In addition, Mrs. Jefferson testified that sometime before September 29, 1981, and since that date she had had occasion to shop around to ascertain the prices and values of television sets and stereo sets similar in nature to the ones she owned. Such testimony clearly indicates that this owner was familiar with the purchase prices, ages, past use, condition and what like sets were bringing on open market.
The opinion of Mrs. Jefferson was substantiated by the testimony of Officer Guthrie, an investigative officer perfectly familiar with the value of such property in his line of work. This officer testified that in his opinion the property of Mrs. Jefferson was in good condition and that in his past experience of investigating burglaries and thefts for some three years he had had occasion to ascertain the fair market value of items similar in nature, condition, age and brand to those involved in the Jefferson burglary. When questioned by the court as to what function he played in ascertaining the value of such items in conjunction with his job for various items of such property that were allegedly stolen, this officer testified that he had to ascertain the value of such items from time to time and that this was accomplished by checking with local pawn shops in the Huntsville area and used appliance stores after observing the age of such items.
As stated by the court in the case of Lasley v. State, supra,
 "Just as the corpus delicti of the crime charged and the defendant's criminal agency may be established by circumstantial evidence, Stewart v. State, 350 So.2d 764, so the value of stolen property may be proven by circumstantial evidence. 52A C.J.S. Larceny § 133 (1968)."
We hold that the evidence "as to what the stolen property cost at the time it was purchased by its owner," and "the serviceability of the property at the time it was allegedly stolen," and "the age of such property" furnished an adequate if not substantial basis for a finding by the jury that the property in question was worth more than $100. Johnson v.State, 374 So.2d 417 (Ala.Cr.App. 1979).
The foregoing opinion was prepared by Hon. DOUGLAS S. WEBB, Circuit Judge, temporarily on duty on the court pursuant to Section 12-2-30 (b)(6), Code of Alabama 1975; the Court has adopted his opinion as its own.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur. *Page 210