WILLIAM C. DAVIS, JR., Plaintiff in Error, *vs.* E. R. HINCKE *et al.* Defendants in Error.

*Opinion filed June 16, 1914.*

1. DEBTOR AND CREDITOR—*what does not raise estoppel to deny agent's title to funds.* The fact that a mother entrusts her funds to her son for investment, relying on his discretion, does not estop her, as against creditors of the son, from denying the son's title to funds which he loaned in his name, where she had no knowledge that he was loaning the money in his own name or knowingly consented to his doing so, or knew, or had reason to suppose, that he was deceiving any person as to his financial means or was deriving false credit from the fact of his controlling her property.

2. SAME—*section 7 of the Statute of Frauds does not apply to money in hands of agent for investment.* The object of section 7 of the Statute of Frauds, relating to five years' possession by one person of the goods and chattels of another, was to prevent the frauds which may arise from the long continued possession of visible, tangible, movable property, the mere possession of which constitutes evidence of ownership in the person having the custody; and said section does not apply to money in the hands of an agent for investment, or to choses in action in which such money has been invested.

3. SAME—*when creditor cannot interfere with debtor's settlement with another creditor.* Even though a debtor may have had possession for more than five years of the goods and chattels covered by section 7 of the Statute of Frauds, yet his ownership of such goods and chattels does not become absolute under said section, except as to creditors; and hence if he returns the goods and chattels to the real owner in satisfaction of his debt to her before any other creditor has acquired a lien, the settlement cannot be interfered with by other creditors.

4. WORDS AND PHRASES—*precise import of words "goods and chattels" depends upon the subject matter and context.* The ex-

pression "goods and chattels" is a term of very extensive meaning, and the precise import to be given such expression, as to whether it is intended to include personal property of every kind, including both tangible and intangible, or is used in a more limited sense, depends upon the subject matter and the context.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Perry county; the Hon. GEORGE A. CROW, Judge, presiding.

RALPH E. SPRIGG, H. L. BROWNING, L. O. WHITNEL, and J. FRED GILSTER, for plaintiff in error.

B. W. POPE, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Perry county dismissed a creditor's bill for want of equity, and the Appellate Court for the Fourth District having affirmed the decree, the record has been brought here by *certiorari* for review.

The complainant having recovered a judgment in November, 1910, against E. R. Hincke and become the assignee of two other judgments against him, caused executions to be issued, which were returned no property found. Thereupon this bill was filed, charging that E. R. Hincke had real estate, or some interest therein, and money, stocks, bonds, notes and life insurance policies which he kept concealed or the title to which was held by his mother, Mary Hincke, which property the complainant had been unable to reach by execution; that E. R. Hincke, since January 1, 1907, and after all the debts upon which the judgments in question were rendered were contracted, had put out of his name and possession, by some pretended sale or otherwise, divers bonds, stocks and promissory notes owned by him, with intent to hinder and delay his creditors, all of which property was held in secret trust by his mother, Mary

Hincke, and other persons to whom the same had been transferred, with the private understanding that the same should be held for the benefit of E. R. Hincke. E. R. Hincke and Mary Hincke answered the bill under oath, and a hearing upon the evidence resulted in the decree dismissing the bill.

The material facts appearing in the record are, that Mary Hincke, who in the fall of 1911 was seventy-six years old, was possessed of an estate of about $150,000, and for many years before that time had transacted no business except through the agency of her son, E. R. Hincke. He was a man actively engaged in business of various kinds but was not a man of wealth. In 1901 he made a loan to W. S. Wilson, and continued to lend him money, renewing and increasing the loans, until in 1909 they amounted to $22,000, when three new notes were given, one for $2000 and two for $10,000 each, payable one year after date and secured by the pledge of certain stocks and bonds. These three notes were all payable to Mary Hincke though all the notes previously given by Wilson had been payable to E. R. Hincke. Wilson knew nothing about whose money was loaned to him, except that Hincke had often told him, when giving him checks signed "Mary Hincke, by E. R. Hincke," that he (Hincke) was handling his mother's money, and Wilson so understood it. Wilson wrote the notes as they were renewed, and Hincke never gave him any directions as to how they should be drawn until the last time, when he directed them to be put in his mother's name. Some of the enterprises in which E. R. Hincke was interested were unsuccessful, and before April, 1909, he was embarrassed financially. He was indebted to his mother in a large sum, and in March and in August, 1910, he gave to her several other notes, which were secured by the pledge of certain stocks and bonds which he owned.

There is no dispute in the testimony that E. R. Hincke was justly indebted to his mother in the full amount of

the notes executed to her by him, or that the money lent to Wilson was, in fact, the money of Mrs. Hincke, as E. R. Hincke represented it to be. E. R. Hincke in 1910 was unable to pay his indebtedness, but the law did not prevent his applying his assets to the payment of such of his creditors as he chose.

It is insisted by counsel for plaintiff in error that the transaction was fraudulent in fact, and that Mrs. Hincke ought to be estopped, as against the plaintiff in error, from disputing her son's title to the notes, because she permitted him to transact her business with her money in his own name, thus enabling him to present a false appearance of wealth, in reliance upon which the plaintiff in error extended credit to him and has been injured. There is no evidence that Mrs. Hincke had any knowledge that E. R. Hincke was making loans of her money in his own name or that she knowingly consented to his doing so, or that she knew or had any reason to suppose that he was deceiving any person as to his financial means or was deriving any false credit from the fact of his controlling her property. She simply entrusted her funds to him for investment, relying upon his discretion, and there is no evidence that she had any knowledge of the character of the investment or of the amount of his property or extent of his business or credit.

Counsel for the plaintiff in error rely strongly upon section 7 of the Statute of Frauds, which provides that "where any loan of goods and chattels shall be pretended to have been made to any person, with whom, or those claiming under him, possession shall have remained for the space of five years, without demand made and pursued by due process at law, on the part of the pretended lender, or where any reservation or limitation shall be pretended to have been made of an use or property by way of condition, reservation, remainder or otherwise, in goods or chattels,

the possession whereof shall have remained in another as aforesaid, the same shall be taken, as to creditors and purchasers of the person aforesaid so remaining in possession, to be fraudulent, and that the absolute property is with the possession, unless such loan, reservation or limitation of use or property were declared by will or deed in writing, proved and recorded as aforesaid."

It is claimed that the loans made by E. R. Hincke to W. S. Wilson for $22,000, even though the money loaned was the property of Mary Hincke, were in the possession of E. R. Hincke for more than five years, and under this section of the statute they became his property and were subject to the payment of his debts. Even if this were true, the plaintiff in error could subject the property to the payment of his debt only by the acquisition of a lien, and he acquired no lien prior to the filing of his bill. If E. R. Hincke had used Mary Hincke's property so as to make it liable for his debts he was still bound to account to her for it. The property did not become absolutely his but only as to creditors. Mary Hincke was his creditor, and if, before any other creditor acquired a lien, the property was returned to her in extinguishment of so much of his debt to her, no other creditor could interfere with her possession or title. His debt to her was of equal validity with his debt to any other creditor, and his surrender of the property to one creditor in payment of a valid debt could not be interfered with by another creditor.

The section of the statute in question, however, has no application to the condition here. The "goods and chattels" mentioned in that section are the visible and tangible articles of personal property of which actual possession may be had and delivered. That expression does not refer to choses in action which are incapable of manual delivery, to promissory notes or other securities which are only evidences of indebtedness, or to money the loan of which passes the title to the particular pieces and only

creates an indebtedness from the borrower to the lender.
The expression "goods and chattels" is a term of very
extensive meaning, and is often used to designate personal
property of every kind, as well intangible as tangible, as
distinguished from real property, and it is also frequently
used in a more limited sense, the precise import depending
upon the subject matter and the context. Under the title
"goods" or "goods and chattels" may be found in the en-
cyclopædias of law many cases illustrating the extended or
limited meaning given to this phrase under varying circum-
stances. In *Chicago and Aurora Railroad Co.* v. *Thomp-
son,* 19 Ill. 578, the phrase was held not to include bank
bills, within the meaning of an allegation in the declara-
tion that the defendant was a common carrier of goods
and chattels for hire, though it is there said: "Money is
a chattel, and as chattel, according to Lord Coke, signifies
goods, money is therefore goods, and not only that, but
goods and chattels. Choses in action are goods and chat-
tels; bank bills are choses in action; therefore bank bills
are goods and chattels and must be comprehended under the
word 'goods.'" In *Crawford* v. *Schmitz,* 139 Ill. 564, it
was held that choses in action were not subject to levy and
sale on execution, although under the statute all the goods
and chattels of the defendant were made liable to such levy
and sale. In *Loeber* v. *Leininger,* 175 Ill. 484, it was held
that the lien for taxes assessed upon personal property,
created by section 254 of the Revenue act upon the personal
property of the person assessed, is limited by section 177
to the goods and chattels of such person, and that "goods
and chattels" as there used included only such personalty as
might be levied upon and sold under an execution upon a
judgment at law. The object of the statute here in ques-
tion was to prevent the frauds which may arise from the
long continued possession and apparent ownership of visible,
tangible, movable property, the mere possession of which
constitutes evidence of ownership in the person having the

custody. It does not apply to money in the hands of an agent for investment or to choses in action in which such money has been invested.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*