WENDALL A. BRYANT

*vs.*

ANNIE B. BRYANT, FLOSSIE M. RUMERY AND FLORENCE BRYANT.

Cumberland.      Opinion July 30, 1930.

*Edward C. Reynolds*, for petitioner.

*Berman & Berman*, for defendant, Annie B. Bryant.

*Cook, Hutchinson, Pierce & Connell*, for defendant, Florence Bryant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, JJ.   PHILBROOK, A. R. J.

PHILBROOK, A. R. J.  This is a bill in equity praying for construction and interpretation of certain provisions in the will, and codicils thereto, of Charles Bryant who died on the twelfth day of December, 1927. His will was dated September 12, 1912, the first codicil was dated November 23, 1917, and the second codicil was dated June 10, 1925.

The parties, and their relationship to the testator, are as follows:

1.  Wendall A. Bryant, son, and executor of the will;
2.  Annie B. Bryant, widow;
3.  Flossie M. Rumery, daughter;
4.  Florence Bryant, daughter-in-law, and widow of Charles F. Bryant, another son of the testator, who died after the date of the first codicil and prior to the date of the second.

In the original will the residuary legatees were the two sons, Wendall and Charles F. By the second codicil the former received the sum of three thousand dollars, as his full share in the estate of the testator, and the provision making him one of the residuary legatees was thereby revoked. In that same second codicil the testator says: "Since my son, Charles F. Bryant, has deceased since the making of my said will and codicil, I revoke so much of said will as made provision for him, the said Charles F. Bryant, and since there survives him his widow, Florence Bryant, for whom no provision is made in said will and codicil, I do now give and bequeath unto the said Florence Bryant all the rest, residue and remainder of my estate, after the provisions heretofore made in said will and codicils are carried out."

In the court below the case was heard upon bill, answers of the testator's widow and of the residuary legatee, and replications of the plaintiff. Florence M. Rumery filed no plea, answer or demurrer. By agreement the case comes to the law court on report. The controversy, therefore, is between the widow of the testator and his residuary legatee, and relates to the ownership of two United States Liberty Loan Bonds, each of the par value of one thousand dollars. The bill alleges, and the answers of the contending parties admit, that these two bonds "were in the house occupied by the said Charles Bryant as a home at the time of his decease."

The record discloses that they were kept "in the front hall" . . . "right in the corner, under the carpet."

The original will contains the following provision for the testator's wife: "First; I give, bequeath and devise unto my wife, Annie B. Bryant, my homestead place in said South Portland, and all of the household furniture and all other personal property belonging to me in the home. Also the sum of five hundred dollars in cash to be paid to her promptly."

The first codicil contains a modification of the pecuniary provision for his wife by increasing the amount to fifteen hundred dollars. The second codicil again modifies the amount of the pecuniary provision by increasing it to three thousand dollars "in addition to the other provisions made for her in my said will."

The further answer of Annie B. Bryant, widow, in paragraph four, says "that the two United States Liberty Loan Bonds for one thousand dollars ($1000.00) each, described in the 'Schedule of Assets,' were payable to bearer and were negotiable by delivering physical possession thereof"; and in paragraph ten says "that it was the intention of the said Charles Bryant, deceased, during his lifetime, that the the two bonds heretofore described were to pass at his death to the said Annie B. Bryant and that he had so expressed·himself many times." Therefore she prays that the court may order the said bonds, or the proceeds thereof, turned over to her as her property, and for her costs. The defendant, Florence Bryant, residuary legatee and devisee, contends that the term "personal property," as used in the bequest to Annie B. Bryant, includes only goods and chattels in the house at the time of the testator's decease, and does not include these two bonds.

Subject to objection the widow was allowed to offer testimony regarding oral statements of the testator, made in his lifetime, to prove that it was his then intention that the bonds in question should pass to his widow at his decease.

The issues, therefore, are two in number, viz.:

I. Does the term "personal property," as used in the bequest and devise to the wife, viz.: "my homestead place in said South Portland, and all of the household furniture and all other personal property belonging to me in the home," include bonds, notes, bank

books, or other rights and credits, or choses in action, or is it limited to goods and chattels?

II. Is evidence of the testator's oral declarations admissible to show what he intended the term "personal property," as so used in his will, should include?

The controlling rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator, expressed in his will, shall prevail, provided it is consistent with the rules of law. The entire will should be considered with a view to give effect, so far as the law allows, to its every provision. The intention, as to any particular item, is often aided and sometimes deduced, from other provisions, and from the general scope and trend of the instrument. *McGuire* v. *Gallagher*, 99 Me., 334; *Andrews* v. *Schoppe*, 84 Me., 170.

The case at bar presents elements, peculiarly within this rule. The bonds in question had not been purchased by the testator at the time of making the original will, and obviously he had no then intention that any such securities should pass to his widow by the terms of his will as then expressed. The record does not show the date of the hearing in the court below, but as plaintiff's replications are dated April 8, 1930, it is obvious that the hearing could not have been at a time earlier than that date. According to the record the bonds were purchased eleven or twelve years before the hearing. Taking the longer time as a basis of reckoning the purchase date of the bonds was subsequent to the date of the first codicil. Again it may be confidently stated that at the time of making the first codicil there was no then intention that these bonds should pass to the wife of the testator. As we have already observed, the pecuniary bequest to her was increased.

When the second codicil was executed there had been important changes in the family of the testator. One of the residuary legatees, a son, had died leaving a widow. This led to equally important changes in the will. The pecuniary bequest to the testator's wife was made six times larger than in the original will, to the son Wendall was bequeathed a fixed sum of three thousand dollars, in lieu of a residuary share in the estate, and a new residuary legatee was created. Even then no specific mention was made as to dispo-

sition of the bonds. If the testator intended that so large a share of his estate, in addition to the real estate, should go to his widow, it would have been easy, and perhaps natural, for him to have said so.

Let us now consider the entire amount of the estate. The inventory, included in the record, shows:

| | |
|---|---:|
| Real estate | $ 1,650.00 |
| Goods and chattels | 150.00 |
| Rights and credits | 10,352.23 |
| | |
| Total | $12,152.23 |

The legacy to the testator's widow, made up of the real estate, goods and chattels, and a cash bequest of three thousand dollars, yields a total of four thousand eight hundred dollars. This amount is slightly less than forty per cent of the entire estate. It may be properly remarked that the testator's widow was his second wife and bore him no children.

From the rights and credits, amounting to $10,352.23, there must be paid:

| | |
|---|---:|
| To Annie B. Bryant, widow | $3,000.00 |
| To Wendall A. Bryant, son | 3,000.00 |
| To Flossie M. Rumery, daughter | 500.00 |
| For debts, expenses of administration, and executor's commission | 1,400.00 |
| | |
| Total | $7,900.00 |

This would leave a residuum of $2,452.23. If the bonds are to become the property of the testator's widow her share in the estate would amount to six thousand eight hundred dollars, and the share remaining for the residuary legatee would be reduced to $452.23. If the bonds are to remain in the residuum and become the property of the residuary legatee then her share in the estate would amount to $2,452.23. This would give the widow of a deceased son a legacy which is $547.77 less than the legacy to the living son. By the terms of the original will, if both sons had lived, they would have shared equally in the residuum. Considering the care used in drafting the second codicil, as well as the causes which prompted the

same, assuming that the testator must have known the extent of his estate, approximately at least, and that he realized the conditions of those to whom his bounty should be extended, we find within the terms of the will, as expressed, strong evidence of the actual intention of the testator. This evidence is more significant when we note that no specific mention of the bonds was made in the codicil, although it is claimed that he had talked with others about his possession of the same. If he had really intended these securities to pass to his widow it would have been easy and natural for him to so provide in his will or codicil.

But there are also certain rules of law which must be considered in solving the problem before us.

As we have already observed, Annie B. Bryant claims that the bonds in question were payable to bearer and were negotiable by delivering physical possession thereof. Just what was intended under this claim is not made clear. If it is claimed that any ante-mortem delivery of the bonds was made to Annie, by the testator, then the reply must be that such claim is not sustained by the record.

The chief legal contention involved in the case is an answer to this question, viz.: did the testator, by the terms used in the will, legally express an intention that these bonds should pass to his wife Annie by virtue of the words "personal property," as this expression is ordinarily and popularly used in wills.

This Court has held that the words "personal property" are susceptible of two meanings ; one, the broader, including everything which is the subject of ownership, except lands, and interest in lands ; the other, more restricted, oftentimes embracing only goods and chattels ; and it has also been suggested that it is in the latter sense that the expression is ordinarily and popularly used. *Andrews* v. *Schoppe*, supra ; *Crosby* v. *Cornforth*, 112 Me., 109. In the former case our Court cited, as authority, *Bills* v. *Putnam*, 64 N. H., 554, where it was stated that it is at least doubtful whether the term "personal property" is generally understood to include money, notes, and choses in action.

The law is also well settled in this state that in ascertaining the real intention of a testator there is a rule, applicable in the con-

struction of wills, that where certain things are enumerated, and a more general description is coupled with the enumeration, that description is commonly understood to cover only things of a like kind (*ejusdem generis*) with those enumerated. This is because it is presumed that the testator had only things of that kind in mind. *Andrews* v. *Schoppe*, supra.

In this will the language is "all of the household furniture and all other personal property belonging to me in the home." When we speak of personal property in a "home" the mind more naturally visualizes books, pictures, furnishings, furniture, and all such things as are generally found in and contribute to the enjoyment and utility of one's abode. To extend the meaning of the words "personal property" so as to include rights and credits is neither easy nor natural.

It has been well said that it is extremely difficult to construe one will by the light of decisions upon other wills framed in different language, and that decisions of the courts interpreting other wills somewhat differently phrased, or surrounded by different conditions, are very unsafe and uncertain guides. The diligence and learning of counsel in the case at bar have led us into excursions over broad fields, from which we return satisfied that the rules enunciated by our own court are of sufficient assistance in reaching our conclusion which is that the will and codicil, expressed as they are in these particular instruments, do not convey the bonds to the widow but they constitute part of the residuum of his estate.

One further point demands our attention, and relates to admission of oral expressions of the testator to demonstrate his intention.

In the construction of a will, parol testimony is frequently of some assistance for the purpose of identifying the beneficiary, or the subject matter of the devise, or explaining the situation and circumstances surrounding the testator at the time of making the will to be construed, or for the purpose of throwing some light upon the sense in which words of doubtful and ambiguous meaning were used. But the testator's declarations of intention, whether made before or after the making of the will, are alike inadmissible. 1 Greenleaf on Evidence, Sec. 230; *Farnsworth* v. *Whiting*, 102 Me., 296. It is familiar law that the intention of the testator, collected

from the whole will, and all the papers which constitute the testamentary act, are to govern; that the intent is to be sought in the will as expressed, and that the declarations of the testator before or after the will was made can not aid the interpretation. *Tibbets* v. *Curtis*, 116 Me., 336.

Applying these well established rules, enunciated by our own court, we unhesitatingly hold that the offered oral testimony upon the question of intention was inadmissible.

Our decision, therefore, is that the bonds in question constitute a part of the residuary estate, and that a decree below should be made in accordance with this opinion.

<div align="right">

*So ordered.*