LEROY *v.* KIRK, Adm'r, d.b.n., c.t.a. of the Estate of Millicent Desiree Leifson ET AL.

[No. 434, September Term, 1970.]

*Decided June 1, 1971.*

The cause was argued before HAMMOND, C. J., and FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Richard S. Paulson* and *Richard A. Buddeke,* with whom was *H. Robert Venables* on the brief, for appellant.

*Richard G. Anderson,* with whom was *Marvin I. Anderson* on the brief, for The Society for the Prevention of

Cruelty to Animals of Anne Arundel County, part of appellees. *Frank C. Serio,* with whom were *Serio, Hopper, Blumenthal & Carmody* on the brief, for Anne Arundel General Hospital, other appellee. No brief filed on behalf of other appellees.

HAMMOND, C. J., delivered the opinion of the Court.

Judges often have written that no will has a twin brother. Here, on December 31, 1964, Gunnar Leifson and his wife, Millicent, executed wills drawn by the same scrivener which were primarily reciprocal and secondarily mutual. Except for the interchange of positions to effect reciprocity and for the changes of gender, the wills are identical. Her will directed that all death taxes be paid by the executor and charged as part of the expenses of administration. "[A]ll of the rest, residue and remainder of [her] estate, of whatsoever kind and wheresoever situate" was devised and bequeathed to her husband if he survived her. If he did not survive her, as turned out to be the case (he died in February 1968 and she the following Christmas morning), Mrs. Leifson made the following bequests:

1. (Item IV of the Will) $5,000 to Eva Cederstrom of Copenhagen, if she is living at the testatrix's death;

2. (Item V) "the sum of Ten Thousand Dollars ($10,-000) and all of my personal property, including my automobile, boat and the contents of my house and outbuildings, unto MRS. BETTY JENSEN LEROY [the appellant] * * * if she survives me";

3. (Item VI) $5,000 to WARDS (Welfare of Animals Used in Research in Drugs and Surgery) ;

4. (Item VII) "* * * I direct my Executor to liquidate that portion of my estate remaining after payment of the bequests set forth in ITEMS IV, V, and VI above, and to distribute the resulting sum in equal shares to the ANNE ARUNDEL GENERAL HOSPITAL, Annapolis, Maryland, and the ANNE ARUNDEL COUNTY CHAPTER OF THE SOCIETY FOR THE PREVENTION OF

CRUELTY TO ANIMALS [and] [i]n the event that either or both of the legatees in ITEMS IV and V above should predecease me, their bequests shall be made a part of the bequests set forth herein * * *."

Mr. and Mrs. Leifson lived at Cumberstone in Anne Arundel County. Their home was owned as tenants by the entirety and their stocks were in joint names. Her gross estate consisted of the proceeds of sale of the home property which she had contracted to sell less than a month before she died, $65,000; stocks in various corporations, $150,000; cash in banks, $44,000; and tangible personal property appraised at some $3,500.

The present controversy is as to the true meaning of the bequest to Betty Jensen LeRoy. Mrs. LeRoy contends that the bequest given by Item V of the will of "all my personal property" includes not only tangible but also intangible personal property and the beneficiaries under Item VII, the Anne Arundel General Hospital and the Animal Society, contend that Mrs. LeRoy was given $10,-000 and the tangible personal property. If Mrs. LeRoy is right, she would get the entire net estate, since at the time of Mrs. Leifson's death she owned no real property, and the charities would get nothing. (At the argument Mrs. LeRoy's lawyer said she renounced any claim to the $65,000 proceeds of sale of the home property, by what logic or process of reasoning we were not advised and are unable to perceive.)

Judge Childs ruled that Mrs. LeRoy took but $10,000 and the tangible personal property, and we think he was right in so doing.

In *Marty v. First National Bank of Baltimore,* 209 Md. 210, 216-217, we set out the aims and purposes of one who must construe a will and we will not reiterate them at length. To divine the intention of a testator is the primary and paramount goal in the construction of his will. The search is not for his presumed but for his expressed intention. What must be sought is the true meaning of his words, not what he meant as distinguished from what his words express, "but simply what is the

true meaning of his words; not merely what *he* meant, but what *his words* mean." Miller, *Construction of Wills*, § 10. What the words express is to be interpreted according to their plain meaning and import. This expressed intention must be gathered from the language of the entire will, particularly from the clause in dispute, read in the light of the surrounding circumstances when the will was made.

The armchair background is not significant or particularly helpful here. The Leifsons had no children. Gunnar Leifson had two brothers who survived him. Millicent Leifson left surviving her no known relatives. Eva Cederstrom of Copenhagen was a friend of the Leifsons, particularly of Millicent, who had been introduced to them by Commander and Mrs. LeRoy. The LeRoys were friends of the Leifsons and each pair visited the other from time to time and occasionally took trips together. Millicent Leifson was a dog lover and WARDS had treated one of her dogs for, apparently, a rare disease. Millicent Leifson had been a patient at the Anne Arundel General Hospital for a long stay. Towards the close of her life she had a problem of equilibrium and had to be assisted in walking. She did not drive a car. Some two weeks before she died, the stock certificates worth $150,-000 had been mailed to her at her home by registered mail by her lawyer after he had caused them to be transferred from the joint names of Gunnar and herself to her name. One Edith Gross, who started to work for Mrs. Leifson in March 1968, took the registered mail envelope containing the stock certificates from the postman to Mrs. Leifson in March 1968, took the registered mail envelope of her job. After the stocks came, Mrs. Leifson planned to be driven to the bank where she had a safe deposit box by Mrs. Gross but she never went because she became too sick and the certificates were in the house when she died.

Mrs. LeRoy's approach is simple and direct. She says that the language of Item V of the will is clear and un-

ambiguous, is consistent with the will as a whole and admits of but one construction — that Betty LeRoy was meant to be beneficiary of the intangible personal property—the stock and cash — owned by Millicent at her death.

We find the approach to be too simplistic. It is true that a bequest of "personal property" without more includes every form of personal property, tangible and intangible, from whatever source derived, that is everything except real estate. It is equally true, however, that the broad scope of the words "personal property" standing alone is limited by the rule that "if there be anything in any part of the will which restricts or qualifies the general term, the latter must be so restricted and qualified, if it can be done without violating some other principle of law or the manifest intention of the testator." *Frick v. Frick*, 82 Md. 218, 224. To the same effect is Miller, *Construction of Wills*, § 102. In 4 *Bowe-Parker*: *Page on Wills*, § 33.24, p. 334, the text reads:

> "Other provisions of the will may limit the meaning of 'personal property.' The context may show that the term is limited to tangible personal property, and that it is used as an equivalent to one meaning of 'goods and chattels.'
> * * *
> "It is said that the popular meaning of 'personal property' is tangible personal property, which is equivalent to one meaning of goods and chattels." (footnotes omitted)

The reference to the fact that often the popular meaning of "personal property" is tangible personal property is supported by the case of *Cameron v. Frazer*, 187 Md. 368, 373-374, a case which essentially is dispositive of the case before us. Judge Markell for the Court there held:

> "But this testator did not use the words 'all my personal property' without any limiting con-

text. *Frick v. Frick,* 82 Md. 218, 222, 223, 33 A. 462. He said 'my home property *located* at Earleville, Maryland, including all *furniture* therein and *other* personal property *located on the premises.'* (Italics supplied.) These limiting words, like the horse, implements and other goods and chattels covered by them, are of the earth, earthy. They suggest tangible property, goods and chattels, which have a 'local habitation,' not securities or other choses in action,' * * *.

"This view is in accord with authorities in other jurisdictions. All rules and generalizations are subject to exceptions when the will shows a contrary intent on the testator's part. In most cases, however, the words 'personal property' are limited to tangible property or goods and chattels either (1) when the context makes the rule *ejusdem generis* applicable or (2) when description by location, *e. g.,* the contents of a house, exclude choses in action, which have no location. * * * It is, however, generally held that words such as 'furniture and other personal property,' when the rule *ejusdem generis* is applicable, or 'personal property located in my house,' do not include bonds or other securities or choses in action. In *Bryant v. Bryant,* 129 Me. 251, 151 A. 429, 431, a bequest to a wife of 'my homestead place * * * and all of the household furniture and all other personal property belonging to me in the home' was held not to include Liberty Bonds. The court remarked that the expression 'personal property' is 'ordinarily and popularly used' in the more restricted sense 'embracing only goods and chattels.' "

Other cases that are in accord include *In Re Graham's Estate* (Traynor, J. for a unanimous Supreme Court of California in Bank), 316 P. 2d 945, 947; *Blakeman v.*

*Harwell* (Ga.), 31 S.E.2d 50, 57; *Equitable Trust Co. v. Clavey* (Del.), 21 A. 2d 719, 721 (aff'd on opinion below, 28 A. 2d 309) ; *In Re Horne's Estate* (Dist. Ct. App. Fla.), 171 So. 2d 14.

We see various indications in Mrs. Leifson's will that her words mean that the term "personal property" in Item V of her will included only tangible personal property. The will gave her husband if he survived her all of her estate "of whatsoever kind and wheresoever situate." Eight lines down she gives Betty LeRoy "all my personal property" but does not add "of whatsoever kind and wheresoever situate." The absence of these words would seem to indicate an intention to give less than an all-inclusive gift of personalty. Instead of following the words "all my personal property" with all-inclusive words, Mrs. Leifson said: "including my automobile, boat and the contents of my house and outbuildings," which clearly suggests that she used the words "personal property" as meaning tangible personal property. We think this is a case where specificity of example narrowed the generality of the term "personal property" under the maxim *noscitur a sociis* (of which the maxim *ejusdem generis* is an illustration) and that these maxims apply here as they did in *Cameron v. Frazer, supra.* The maxims mean that the meaning of a word is or may be known from the accompanying words so that, under the rules, general and specific words, capable of analogous meaning, when associated together, take color from each other, so that general words are restricted to a sense analogous to less general. *Black's Law Dictionary* (4th Ed.) 1209.

There are further supports in the will for finding a restricted gift of personalty. Debts, expenses and death taxes are directed to be paid from the residue. If it was intended that Mrs. LeRoy was to get all the intangible personal property as well as all the tangibles, the residue could have consisted only of the real estate, that is, the home property. To pay the death taxes there would

have had to have been one sale of the realty early in the administration of the estate and there could have been no other later sale of "that portion of my estate remaining after payment of the bequests * * *." One can only conclude that Mrs. Leifson foresaw that there would be a liquidation of estate assets after Betty LeRoy's bequests had been distributed to her.

There are other similar signs on the face of the will that it did not contemplate that the residuary charities would receive only the proceeds of sale of real estate. Mrs. Leifson's bequest to Mrs. LeRoy was of "all my personal property," not, following as it did a pecuniary bequest to Eva Cederstrom and the $10,000 pecuniary bequest to Mrs. LeRoy, of "all my other personal property" or of "all my personal property remaining after payment of the bequests to Eva Cederstrom and Betty LeRoy." The use of either of these phrases would have suggested that Betty LeRoy was to get all the intangible personal property. What a testator does not say may be significant. *Dalrymple v. Gamble,* 68 Md. 523, 529. What Mrs. Leifson does say after "all my personal property" is "including my automobile, boat and the contents * * *," which, as we have said, would seem to restrict the broader meaning of personal property to the lesser meaning of tangibles. There is significance, too, we think, that the $5,000 legacy to WARDS followed the gift of all personal property to Betty LeRoy. If it had been intended that Mrs. LeRoy was to receive all the intangibles, the only source for the payment of the WARDS bequest would have been the proceeds of sale of real estate. It is difficult to conclude that the testatrix contemplated this, in view of the composition of her estate.

There remains a final sign that Mrs. LeRoy was to receive in addition to $10,000 only tangible personal property. If she had been meant to receive all the intangibles, there would have been no need and no point in giving her the $10,000 bequest. In *Andrews v. Schoppe,* 24 Atl. 805, 808, the Supreme Judicial Court of Maine on analogous facts and language of the will followed an early English

case, *Rawlins v. Jennings,* 13 Ves. Jun. 39, 33 English Reports 209, 211, and 1 Jarman, *Wills,* § 751, and held:

> "But basing our conclusion on other grounds, and taking the entire clause in which this bequest is made, it seems clear that the testatrix employed the expression, 'and all other articles of personal property in the house,' not in its broadest, legal signification, but in the limited sense of *ejusdem generis.*
>
> "Moreover, this construction is strongly enforced by the fact that a pecuniary legacy of $900 is given to this same niece in the very next clause of the will. This circumstance of a pecuniary or specific legacy being given to the same or other parties has commonly been considered as favoring the construction adopted in this case. * * * Here the succeeding clause in this will gives a pecuniary legacy, not only to this niece, but also to the brother and sister of the testatrix."

See also *In Re Graham's Estate, supra* at 947 of 316 P. 2d, for a similar view.

*Decree affirmed, with costs.*