No. 3-07-0688

Filed September 5, 2008

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | |
|---|---|
| In re the Matter of the Estate of Bernice A. Light, deceased, | Appeal from the Circuit Court of the Tenth Judicial Circuit Peoria County, Illinois |
| DAVID B. RADLEY, Executor, | |
| Plaintiff-Appellee, | |
| v. | |
| | No. 06-P-161 |
| DONALD WOLLAND and VIRGINIA WOLLAND, | |
| Beneficiaries and interest persons of the Estate of Bernice A. Light, | Honorable Richard E. Grawey |
| Defendants-Appellants. | Judge Presiding |

JUSTICE LYTTON delivered the Opinion of the court:

In her last Will and Testament, Bernice Light bequeathed to Donald and Virginia Wolland her two residences "and the contents thereof." Following Light's death, the executor of Light's estate sought instructions from the court regarding what should be done about (1) paper certificates representing securities that were found in one of Light's homes, and (2) payment of the 2005 and 2006 real estate taxes on the residences Light bequeathed to the Wollands. The trial court ruled that the proceeds from Light's

securities would not go to the Wollands and that the Wollands were responsible for paying the 2005 and 2006 real estate taxes on the residences they received under Light's will.  We affirm.

BACKGROUND

In 1964, Bernice Light hired attorney Carol Baymiller to help her execute her first Will and Testament.  From time to time thereafter, Light instructed Baymiller to prepare new wills for her.  When Baymiller retired, his nephew, David Radley, took over his practice.  In 2003, Radley prepared Light's last Will and Testament.  The pertinent paragraphs of that will state:

"FIRST: I direct that my Executor hereinafter named * * * shall pay all taxes assessed or imposed against my estate or against any beneficiary of my estate, any surviving joint tenant or donee of any gift, that said Executor shall not apportion such tax and shall not have the right, power, authority or duty to recover any portion of any tax from any beneficiary under my will or under any insurance policy that I may own or from any other person, firm or corporation. * * *

SECOND:  I give and bequeath * * * my residences at 5625 North Sheridan Road, Peoria, Illinois and at 3005 Ash Street, Lake Placid, Florida, and the contents thereof, all personal and chattel property to my friends, DONALD WOLLAND and VIRGINIA WOLLAND * * *

2

THIRD: I give and bequeath my white mink jacket, my autumn haze jacket, and my leather jacket to my friend, DONISE BROWN * * *

FOURTH: I give and bequeath the sum of three hundred sixty thousand dollars ($360,00.00) in equal shares as a class to: my cousins * * *

* * *

SIXTH: All the rest, residue and remainder of my property, after payment of all debts, taxes, bequests, costs of administration and other expenses thereof, I give and bequeath as follows:

One-half (½) thereof to PEORIA RESCUE MISSION, of Peoria, Illinois;

One-half (½) to TRINITY LUTHERAN CHURCH, 135 N.E. Randolph Avenue, Peoria, Illinois."

Radley was named executor of the will.

In March 2006, Light passed away. Soon thereafter, Radley filed a Petition for Probate of Light's Will and Letters Testamentary.

In September 2006, Donald and Virginia Wolland filed a claim against the Estate of Bernice Light for costs advanced on behalf of the Estate. Those costs included 2005 real estate taxes they paid for 5625 North Sheridan Road, Peoria, Illinois and 3005 Ash Street, Lake Placid Florida.

3

Paper certificates for various stocks and bonds were found in Light's Peoria residence. Radley sold the securities represented by the certificates for $98,595.40. In September 2006, Radley filed a Petition for Instructions to determine what should be done with the proceeds of the securities. In January 2007, Radley filed a Supplement to Petition for Instructions asking whether the executor should pay all or any part of the 2005 and 2006 real estate taxes for the Peoria and Florida residences that Light bequeathed to the Wollands.

At a hearing in June 2007, Radley testified that the language in the first paragraph of Light's will "can be found in virtually all of the wills prepared, and it was not invented by me certainly when I prepared this will, but it was adopted from previous wills of Bernice Light's that Carol Baymiller had originated." According to Radley, that language was "rather boilerplate" and was intended to address the Illinois inheritance tax and the federal estate tax, not real estate taxes.

Radley also testified that Light wanted the Wollands to receive the tangible contents of her homes. Thus, when Radley drafted the second paragraph of the will, his intent was that the Wollands receive tangible property found in the residences, but not intangible property.

The trial court ruled that the phrase "all taxes" in Light's will did not include real estate taxes. The court also ruled that

4

Light intended for the securities represented by certificates found in her Peoria home to be distributed to the charities pursuant to the residuary clause in the will.

ANALYSIS

A court's primary objective when construing a will is to give effect to the testator's intent. In re Estate of Miller, 230 Ill. App. 3d 141, 145, 595 N.E.2d 630, 632-33 (1992). A court must ascertain the testator's intent from the terms of the will. Miller, 230 Ill. App. 3d at 145, 595 Ill. App. 3d at 633.

Words used in a will are construed according to their plain and ordinary meanings. Sverid v. First National Bank of Evergreen Park, 295 Ill. App. 3d 919, 922, 693 N.E.2d 423, 424 (1998). Courts are charged with ascertaining a testator's intent by, wherever possible, giving effect to every word, phrase and clause in a will. Sverid, 295 Ill. App. 3d at 922, 693 N.E.2d at 424-25. While the language itself is the best proof of the testator's intent, when an ambiguity exists, evidence extrinsic may be used to determine the testator's intent. Cain v. Finnie, 337 Ill. App. 3d 318, 320, 785 N.E.2d 1039, 1041 (2003); Miller, 230 Ill. App. 3d at 146, 595 N.E.2d at 633.

I.

The Wollands contend that Light's bequest of "all personal and chattel property" contained in her homes includes intangible property found in the residences, such as stock certificates.

5

Peoria Rescue Mission, Trinity Lutheran Church and Radley respond that the bequest only included tangible property.

No Illinois court has construed the phrase "personal and chattel property" in a will. However, Illinois courts have separately interpreted the terms "chattel", "personal property" and similar words and phrases.

In Illinois, the term "chattel" extends only to tangible articles of personal property that may be possessed and delivered; it does not include securities. See <u>City of Nokomis v. Smith</u>, 74 Ill. App. 2d 211, 212-13, 219 N.E.2d 776, 777 (1966), citing <u>Davis v. Hincke</u>, 264 Ill. 46, 105 N.E. 708 (1914); <u>In re Estate of Berman</u>, 39 Ill. App. 2d 175, 179, 187 N.E.2d 541, 544 (1963). When a testator conjoins a bequest of "chattel" to another bequest, this indicates an intent to convey only tangible property. See <u>Sverid</u>, 295 Ill. App. 3d at 923, 693 N.E.2d at 425 (bequest of "all my personal effects * * * and all other goods and chattels" showed decedent's desire to convey only tangible personal property).

Likewise, Illinois courts have construed "personal property" and similar terms to include only tangible personal property. See <u>Estate of Lindsey v. Taylor</u>, 13 Ill. App. 3d 717, 718, 300 N.E.2d 572, 573 (1973)("personal property in or about said motel" did not include money in motel bank account); see also <u>Sverid</u>, 295 Ill. App. 3d at 923, 693 N.E.2d at 425 (bequest of "personal effects" includes only tangible personal property); <u>Landstrom v. Krettler</u>,

6

105 Ill. App. 3d 863, 866, 435 N.E.2d 149, 151-52 (1982) (same); Mokros v. Blackman, 312 Ill. App. 346, 38 N.E.2d 514, 516 (1941) (same).

The expression "personal property" is ordinarily and popularly used in a restrictive sense embracing only tangible goods and chattel, not money, notes or securities. Blakeman v. Harwell, 198 Ga. 165, 176, 31 S.E.2d 50, 56-57 (Ga. Sup. Ct. 1944); Bryant v. Bryant, 129 Me. 251, 151 A. 429, 432 (Maine Sup. Ct. 1930). Thus, courts generally hold that a bequest of "personal property" does not include intangible property, such as securities. See Turner v. Reed, 518 S.E.2d 832 (Va. 1999); Estate of McKenna, 340 Pa. Super 105, 489 A.2d 862; LeRoy v. Kirk, 262 Md 276, 277 A.2d 611 (Md. App. Ct. 1971); In re Whetmath's Estate, 216 Cal. App. 2d 430, 30 Cal. Rptr. 875 (Cal. App. Ct. 1963); Wachovia Bank & Trust Co. v. Wolfe, 245 N.C. 535, 96 S.E.2d 690 (N.C. Sup. Ct. 1957); Blakeman v. Harwell, 198 Ga. 165, 31 S.E.2d 50 (Ga. Sup. Ct. 1944).

Courts are particularly reluctant to find that a bequest of "personal property" includes intangible property when it includes a description of the property by location, e.g., "located in my house." See LeRoy v. Kirk, 262 Md. 276, 283, 277 A.2d 611, 614 (Md. App. Ct. 1971); Cameron v. Frazer, 187 Md. 368, 374, 50 A.2d 243, 246 (Md. App. Ct. 1946); Bryant, 129 Me. 251, 151 A. at 431-32; see also Lindsey, 13 Ill. App. 3d at 718, 300 N.E.2d at 573. In finding that a bequest of "personal property belonging to me in

7

the home" did not include bonds, the Maine Supreme Court explained:

> "When we speak of personal property in a 'home,' the mind more naturally visualizes books, pictures, furnishings, furniture, and all such things as are generally found in and contribute to the enjoyment and utility of one's abode. To extend the meaning of the words 'personal property' so as to include rights and credits is neither easy nor natural." Bryant, 151 A. at 432.

Here, Light conveyed to the Wollands her residences "and the contents thereof, all personal and chattel property." Based on the plain language of this bequest, the trial court properly concluded that Light intended the Wollands to receive only the tangible property found in her residences and not her securities. See Sverid, 295 Ill. App. 3d at 923, 693 N.E.2d at 425; Lindsey, 13 Ill. App. 3d at 718, 300 N.E.2d at 573.

Even if we were to find the phrase "personal and chattel property" was ambiguous, extrinsic evidence established that Light's intent was to leave the Wollands only tangible property. According to Radley, Light did not discuss leaving any stocks or securities to the Wollands. Thus, the trial court properly concluded that Light intended that the Wollands receive the tangible personalty found in her homes and that the residue of her estate, including all stocks and securities, would go to the two charities named in the residuary clause of her will. See McKenna,

8

340 Pa. Super at 115, 489 A.2d at 868.

                                II.

The Wollands argue that Light's will expressly required Radley to pay from the proceeds of the Estate the 2005 and 2006 real estate taxes for the residences bequeathed to them.

Real estate taxes constitute a lien against the property on which the taxes have been assessed. Forman Realty Corp. v. Brenza, 11 Ill.2d 531, 540, 144 N.E.2d 623, 628 (1957); Gamble v. People, 117 Ill. App.3d 784, 786, 454 N.E.2d 26, 27 (1983); 35 ILCS 200/21-75 (West 2006). Real estate taxes are an encumbrance on real property. 755 ILCS 5/1-2.07 (West 2006). When real estate subject to an encumbrance is bequeathed, the legatee takes the property subject to the encumbrance and is not entitled to have the indebtedness paid from the decedent's estate. 755 ILCS 5/20-19 (West 2006).

Here, the Wollands were bequeathed Light's real estate. The 2005 and 2006 real estate taxes constituted encumbrances upon the properties. See 755 ILCS 5/1-2.07 (West 2006). The Wollands, as the owners of the properties, were responsible for paying the real estate taxes unless Light expressly provided for payment of the taxes out of her estate. See 755 ILCS 5/20-19(a) (West 2006); Griffin v. Gould, 72 Ill. App. 3d 747, 749, 391 N.E.2d 124, 125 (1979).

In her will, Light directed her executor to pay "all taxes

9

assessed or imposed against my estate or against any beneficiary of my estate." The real estate taxes on the properties bequeathed to the Wollands do not fall within this mandate because the real estate taxes were assessed and imposed against the real property, not against Light's estate or the Wollands. See Gamble, 117 Ill. App.3d at 786, 454 N.E.2d at 27. Thus, according to the plain language of Light's will, the Wollands are responsible for paying the 2005 and 2006 real estate taxes on the properties that Light bequeathed to them.

CONCLUSION

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

MCDADE, PJ., and WRIGHT, J., concurring.